### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **LAMONT JOHNSON,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION FILE NO.** |
| **v.** | : | **1:06-CV-1706-AJB** |
| | : | |
| **THE CITY OF ATLANTA,** | : | |
| **GEORGIA, and M.H. PAYNE,** | : | |
| | : | |
| **Defendants.** | : | |

### <u>ORDER AND MEMORANDUM OPINION</u>[1]

Currently before the Court is Defendant's Motion for Summary Judgment, [Doc. 29], and Plaintiff's Motion for Correction of Error in the Caption, [Doc. 37]. For the reasons set forth herein, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment, [Doc. 29], and **GRANTS** Plaintiff's Motion for Correction of Error, [Doc. 37]. The Court also *sua sponte* **DIRECTS** Defendants to file the originals of the following documents within **fifteen (15)** days of entry of this Order: (1) the declaration of Major Calvin Moss; (2) the declaration of Sergeant Jeffrey McGirt; and (3) the affidavit of Tariknesh Bezuneh.

---

[1]    The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73. [*See* Doc. 12].

## I.     AFFIDAVIT, DECLARATIONS, AND DEPOSITION

Defendants have submitted copies of the declaration of Major Calvin Moss, the declaration of Sergeant Jeffrey McGirt, and the affidavit of Tariknesh Bezuneh. [*See* Doc. 29].  Under this Court's Local Rules:

> The parties must file as exhibits to their briefs the originals of any affidavits relied upon in their motion and response papers, and copies of those excerpts of depositions or other discovery materials that are referenced therein. In addition, when a portion of a deposition is referenced and submitted, then the party in custody of the original of that deposition shall cause the entire deposition to be filed with the Court. LR 26.3B(1).

N.D. Ga. R. 56.1C.  Defendants must file the original affidavit of Tariknesh Bezuneh and the original declarations of Major Moss and Sergeant McGirt.

Accordingly, the Court **DIRECTS** Defendants to file these documents within **fifteen (15)** days of entry of this Order.

## II.    INTRODUCTION

On July 20, 2006, the City of Atlanta ("Atlanta" or "the City") and M.L. Payne ("Payne" or "Officer Payne") (collectively "Defendants"), removed Plaintiff's civil action from the Superior Court of Fulton County, Georgia, to the United States District Court for the Northern District of Georgia.  [Doc. 1].  Plaintiff alleged the following state and federal claims in his civil action: (1) assault and battery; (2) unreasonable

2

seizure in violation of his Fourth and Fourteenth Amendment rights (enforced through 42 U.S.C. § 1983); (3) excessive force in violation of his Fourth, Eighth, and Fourteenth Amendment rights (enforced through § 1983); (4) false arrest and false imprisonment; (5) malicious prosecution in violation of Georgia law and § 1983; (6) negligent hiring; (7) negligent retention; (8) negligent training and supervision; and (9) intentional infliction of emotional distress.  [Doc. 1 at Pl. Complaint].

Following the completion of discovery, Defendants filed a motion for summary judgment on May 8, 2007, [Doc. 20], to which Plaintiff responded on July 11, 2007. Defendants did not file a reply brief.  [*See* Dkt.].  Plaintiff also filed a motion for a correction of error in the caption, [Doc. 37], to which Defendants did not respond, [*see* Dkt.].  With briefing completed, the Court turns to Plaintiff's motion for correction of error and Defendants' motion for summary judgment.

## III.    MOTION FOR CORRECTION OF ERROR IN THE CAPTION, [Doc. 37]

Plaintiff moves to correct the error in the caption of the complaint, so that it reads "M.H. Payne, individually."  [Doc. 37].  Plaintiff argues that Rules 15 and 17 of the

Federal Rules of Civil Procedure permit him to correct the misidentification of Payne. [Doc. 45].[2]  Defendants have not responded.

The Court concludes that Plaintiff's motion to correct caption, [Doc. 37], is due to be **GRANTED** as unopposed because Defendants have not contested it. *See* N.D. Ga. R. 7.1B ("Failure to file a response shall indicate that there is no opposition to the motion.").[3]

The Court further notes that this motion may be unnecessary.  Rule 9(a) of the Federal Rules of Civil Procedure state that "[i]t is not necessary to aver the capacity of a party to . . . be sued."  FED. R. CIV. P. 9(a).  Also, Rule 10 of the Federal Rules does not require the caption to contain the capacity of the defendant being sued. *See* FED. R. CIV. P. 10(a) (describing the information that must be provided in the caption); *see also* Wright & Miller, 5A Fed. Prac. & Proc. § 1292 (3d ed. 2007) (noting that "Rule 10(a) does not require a statement of capacity").

---

[2]    Plaintiff filed his motion to correct the caption on June 11, 2007. [Doc. 37].  In this motion, he referred to a brief in support of the motion, but he omitted the brief.  After this Court's staff notified Plaintiff of the omission, Plaintiff filed the brief in support on August 30, 2007.  [Doc. 45].

[3]    The Court further notes that Defendants are not prejudiced by this Order because they have presented arguments asserting that summary judgment is appropriate even if Plaintiff had sued Payne in his individual capacity.

4

Finally, a fair reading of the complaint indicates that Plaintiff has sued Payne in his individual capacity.  The basis for Plaintiff's entire lawsuit stems from actions by Officer Payne while he worked outside of an Atlanta night club.  Also, in seeking damages, Plaintiff has requested to recover from "Defendants," suggesting that he was suing Defendant Payne in his individual capacity.  (*See* Complaint in Doc. 1).  Thus, it appears that Plaintiff has sued Payne in his individual capacity.  *See Marcotte v. Monroe Corrections Complex*, 394 F. Supp. 2d 1289, 1295 (W.D. Wash. 2005) ("Where a plaintiff fails to identify the capacity in which the state actor is sued, the Ninth Circuit looks beyond the caption of the complaint to the 'basis of the claims asserted and the nature of relief sought.'") (citation omitted).  Although Plaintiff's motion may be unnecessary, the Court will **GRANT** it in light of the lack of opposition by Defendants.

## IV.   MOTION FOR SUMMARY JUDGMENT, [Doc. 29]

### A.   *Statement of Facts*

The following pertinent facts of this case at the summary judgment stage are construed in the light most favorable to Plaintiff as the non-moving party.[4]

---

[4]   In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. *Mercado v. City of Orlando*, 407, F.3d 1152, 1155 n.2 (11th Cir. 2005); *Crosby v. Monroe County*,

### 1.    The June 18, 2005, Incident

Officer Michael Payne was working an approved second job outside of Club Uranus on Friday, June 18, 2005.  (D ¶ 1).[5]  Payne along with other Atlanta Police Department ("APD") officers were responsible for crowd control and security outside of busy bars and clubs in Buckhead Village ("Buckhead"), a neighborhood of Atlanta. (D ¶ 2).  To help with crowd control, metal barriers were installed to enlarge the sidewalk by one car length.  (D ¶ 3).  The barriers did not have a sign indicating that it was illegal to sit or lean on barriers.  (P ¶¶ 12, 18).  Payne's duties that night included maintaining the flow of pedestrian traffic.  (P ¶ 11).

Plaintiff and two friends, Trent Washington and Levon Benson, went to Buckhead on June 18, 2005, between 10:00 p.m. and 12:00 a.m. to celebrate belatedly Washington's birthday and to show Washington around Atlanta.  (D ¶ 5; Johnson Dep. at 19). After walking past the clubs in Buckhead, the trio stopped outside of Club Uranus where they leaned against the barricades to discuss their plans, watch the scene,

_____

394 F.3d 1328, 1330 n.1 (11th Cir. 2004).

    [5]    Paragraph numbers preceded by "D" refer to paragraphs in Defendants' "Statement of Undisputed Material Facts," [Doc. 29-3], while paragraph numbers preceded by "P" refer to Plaintiff's "Local Rule 56.1 Statement of Material Facts to Which There Is No Genuine Issue to Be Tried," [Doc. 39].

and get out of everybody's way.  (P ¶¶ 15, 17; Johnson Dep. at 24-25).  Washington

heard Officer Payne tell them to get off the barrier, (P ¶ 20), and Washington then told

Benson and Plaintiff that the police officer wanted them off the barrier.  (D ¶ 11).[6]

Payne was yelling for everyone to get off the barrier,[7] and he was moving his arm in a

waving motion for everyone to get off of it.  (Johnson Dep. at 27, 35-36).  Payne was

standing approximately 20 feet from Plaintiff and his friends.  (P ¶ 19).

Plaintiff spit on the ground as he and his friends were discussing their plans.

(P ¶ 27).  Payne interpreted this as a lewd gesture and ran toward Plaintiff.  (P ¶ 28).

He also believed that Johnson mouthed the words "fuck him" when referring to Payne's

attempt to signal Plaintiff and his friends to move.  (Payne Dep. at 77, 81).  As Payne

approached, Plaintiff and the other two had moved off of the barricade.  (P ¶ 29;

---

[6]    The Court recognizes that Plaintiff disputes the facts in paragraph 11 of
Defendants' statement of facts, but he cites to no evidence to contest this fact.  Under
the Court's Local Rules, a movant's facts are deemed admitted unless the respondent:
"(i) directly refutes the movant's fact with concise responses supported by specific
citations to evidence (including page or paragraph number); (ii) states a valid objection
to the admissibility of the movant's fact; or (iii) points out that the movant's citation
does not support the movant's fact or that the movant's fact is not material or otherwise
has failed to comply with the provisions set out in LR 56.1 B.(1)."  Plaintiff has done
none of these in his response to paragraph 11.  As a result, the Court deems the fact
admitted.

[7]    There were other people leaning on the barrier besides Plaintiff and his
friends.  (Johnson Dep. at 27).

7

Washington Dep. at 36).   Neither Payne nor Plaintiff said anything as Payne approached.  (P ¶¶ 31-32).  Plaintiff saw Payne running in their direction and assumed that a fight was occurring to their right.  The sidewalk was packed as Payne ran toward them.[8]  (Johnson Dep. at 37).  They then looked to their right taking their eyes off of Payne to look for the fight because they had no idea why Payne was running toward them.  (*Id.* at 27, 37-38).

Payne bumped Washington's shoulder, (Washington Dep. at 37), and then ran right into Plaintiff,[9] grabbed him by the collar, shook Plaintiff, and stated, "Where is the gold?[[10]]  Where is the gold now?  Smile now.  Smile now.  I know what that

---

[8]      Paragraph 16 of Plaintiff's statement of facts indicates that the sidewalk was not crowded.  (P ¶ 16).  However, Plaintiff's sworn testimony is as follows: "it was so packed that we was [sic] walking past each other like sideways on the sidewalk." (Johnson Dep. at 38).  Benson's testimony is similar.  (*See* Benson Dep. at 17 ("[I]t was crowded."), 21 ("It's a crowded area.")).  The Court recognizes that Payne testified that the area was not crowded, (Payne Dep. at 78), but the Court treats Plaintiff's testimony as true, *see Kingsland v. City of Miami*, 382 F.3d 1220, 1227 (11th Cir. 2004) (noting that court must accept non-movant's version of facts as true on summary judgment).

[9]      Plaintiff described the initial contact like a football block.  (Johnson Dep. at 39).  Benson indicted that Payne ran into Plaintiff, knocked him on the fence, and knocked him through the fence.  (Benson Dep. at 23).

[10]      Plaintiff apparently was wearing gold caps to cover some of his teeth.  (*See* Washington Dep. at 33).

8

means.  That means F-U you white cracker." (Johnson Dep. at 28; P ¶ 34).[11] Payne then "jerked [Plaintiff] back towards him after he ran into [Plaintiff], he pushed [Plaintiff] up to the fence and jerked [Plaintiff] back towards him and lifted [Plaintiff] up off the ground and threw [Plaintiff] across the fence." (Johnson Dep. at 28-29). Plaintiff first hit the top of the barrier with his right hip, and then he fell to the ground. (*Id.* at 39-40).  Plaintiff landed in the middle of the street.   He urinated on himself when he hit the ground.  (*Id.* at 30-31).  Payne "rushed over towards" Plaintiff, and Plaintiff told Payne that he felt something on his right side while Payne kept asking Plaintiff, "where is the gold?  Is it funny?  Smile now." (Johnson Dep. at 29).

Payne bent down on one knee and "got over the top of" Plaintiff and began lifting up Plaintiff and pounding him into the street.  (Johnson Dep. at 40).  Payne repeatedly picked Plaintiff up and put him back on the ground "hard, forcefully." (*Id.* at 40-41).  Payne also hit and punched Plaintiff in the chest area, and he started yelling, "Get up, get up, get up." (*Id.* at 29, 41).  Plaintiff did not fight back. (Washington Dep. at 38). Plaintiff complained that something was wrong with his right

---

[11]     Payne pushed Plaintiff through the barricade because he believed that Plaintiff was going to become violent.  (P ¶¶ 28, 36; D ¶ 18).  Payne believed that Plaintiff had raised his lips in an aggressive manner and clinched his fists like he was getting ready to strike Payne.  (Payne Dep. at 87, 91).

AO 72A
(Rev.8/82)

leg, so Payne picked Plaintiff up to his feet.  (Johnson Dep. at 41).  When Plaintiff rose to his feet, he immediately fell because his leg gave out on him.  Payne then got back down on top of Plaintiff and forced Plaintiff back to the ground before picking him off of the ground.  (*Id.*).  Payne then dragged Plaintiff across the street to stand next to a wall.  Payne patted Plaintiff down.  (*Id.* at 30).

Payne then arrested Plaintiff for disorderly conduct under the influence,[12] disorderly conduct for blocking vehicle and pedestrian traffic, and disorderly conduct for acting in a violent or tumultuous way.  (P ¶ 41).  Plaintiff complained to Payne about his head and right side and hip hurting.  (Johnson Dep. at 31).  An ambulance pulled up, but Payne told Plaintiff that he did not need an ambulance and that he would be taken to the hospital.  (*Id.*).  Plaintiff was taken to Grady Hospital in the paddy wagon where some guy behind a desk inspected Plaintiff and gave him two or three pills.  (*Id.* at 44-45).  Plaintiff was then taken to jail where he remained until Sunday morning.  (*Id.* at 45).

Plaintiff went to a doctor the following day at the Southern Regional Medical Center where a doctor limited him to lifting 20 pounds and told to get a lot of rest.

---

[12]     Payne testified that he smelled a strong odor of alcohol on Plaintiff. (Payne Dep. at 130).

10

(*Id.* at 48).  Plaintiff was referred to an orthopaedic specialist, Dr. Goodman, whom Plaintiff saw on three occasions.  (*Id.* at 53).  He could not continue to see Dr. Goodman because of monetary problems. (*Id.* at 58).  Plaintiff then saw Dr. Martin on October 12, 2005, one time.  (*Id.* at 59).

Plaintiff went to court three times to answer to the charges, but Payne never showed up for the hearing.  (Johnson Dep. at 76).  The charges against Plaintiff were dismissed on August 10, 2005, because the officer was not in court.  (*See* Nov. 3, 2005, Certification of Judgment in Doc. 40 at Exh. I; *see also* P ¶ 49).

2.    *Officer Michael Payne*

Officer Payne graduated from West Georgia College in 1992 with a B.S. in Recreation.  (*Id.* at 11).  He began working for the APD in September 1997.  (Payne Dep. at 18).  Payne started attending the police academy in October, which lasted 26 weeks, and included classes on the use of force, criminal procedure, and constitutional law.  (*Id.* at 29-33).  Payne also reviewed the standard operating procedure on the use of force a couple of times during "in-service," which is yearly department-wide training that covers a number of subjects.  (*Id.* at 36-37).  Plaintiff was

11

selected to serve on the elite Red Dog Unit[13] for three years, after which he was selected to serve on the elite SWAT team in 2004.  (Moss Decl. ¶ 4 in Doc. 29 at Exh. 6).

During Payne's tenure as an APD officer, Payne has been accused of engaging in unnecessary force on seven occasions between 1999 and 2003.  (Payne Dep. at 120; P ¶ 50).  None of the complaints have been sustained, *i.e.*, Payne was not found to be at fault.  (*Id.* at 121-22).  Concerning Plaintiff's complaint, Payne talked to an investigator from internal affairs.  (*Id.* at 122).  Initially, there was a recommendation that Plaintiff's complaint against Payne be sustained, (Moss Dep. at 135; Payne Dep. at 151, Pl. Exh. 8; *see also* Hendricks Memo dated Dec. 21, 2005 in Doc. 40 at Exh. M), but Major C.W. Moss[14] wrote a letter on Plaintiff's behalf recommending that the complaint not be sustained.  (*See* Moss Dep. at 136; Payne Dep. at 151-52; July 14, 2006, Moss memo in Doc. 29 at Exh. 2).  Ultimately, internal affairs determined not to sustain the complaint after reviewing Moss's findings and Moss's supervisor's opinion.  (Moss. Dep. at 145).

---

[13]     Red Dog officers focus on street level narcotics dealing.  (Moss Dep. at 71).

[14]     Moss commanded the special operations section in August 2003, and, therefore, Payne became under his command at this time.  (Moss Dep. at 140-41).

12

     *3.*     *Atlanta's Policy Concerning Use of Force and Seizures*

Prior to 2004, APD recruits received 900 hours of training in the academy, which included 50 hours of training concerning the use of force. (McGirt Decl. ¶ 5 in Doc. 29 at Exh. 7). Also recruits receive training concerning probable cause and search and seizure. (*Id.* ¶ 7-8). Each year, APD officers receive 24-hours of in service training, which covers the criteria needed to exist to justify use of force. (*Id.* ¶ 6). Officers in the Red Dog unit receive more in depth training concerning use of force. (Moss Dep. at 66-67). The APD requires the use of force to be reasonable, necessary, and justifiable, and its policy is to use the minimum amount of force necessary. (*Id.* ¶ 9). This amount of force typically is an amount of force that just slightly exceeds the use of force offered by the suspect. (Moss Dep. at 27).

     *B.*     *Summary Judgment Standard*

Summary judgment is proper when no genuine issue as to any material fact is present, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The movant carries the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact." *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 840 (11th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

13

"Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991).

The nonmovant is then required "to go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* If the record does not blatantly contradict the nonmovant's version of events, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *See Anderson*, 477 U.S. at 252; *see also EPL Inc. v. USA Federal Credit*

14

*Union*, 173 F.3d 1356, 1362 (11th Cir. 1999); *Duke v. Cleland*, 884 F. Supp. 511, 514 (N.D. Ga. 1995).

C.    Discussion

1.    *Individual Capacity and Officer Payne*

Defendants argue that Plaintiff did not bring federal or state claims against Payne in his individual capacity but instead only raised official capacity claims against Payne. [Doc. 29 at 10-11, 20].  Plaintiff responds that he has brought individual capacity claims against Payne.  [Doc. 40 at 17; *see also* Doc. 37].

The Court concludes for the reasons discussed above in relation to Plaintiff's motion to correct caption that Plaintiff has sued Officer Payne in his individual capacity.  As a result, the Court considers Plaintiff's federal and state claims against Payne in his individual capacity.

2.    *Section 1983 Claims*

a.    *False Arrest and False Imprisonment*

Defendants argue that Plaintiff cannot bring a false arrest or false imprisonment claim because his arrest was supported by probable cause.  [Doc. 29 at 19].  Plaintiff argues that the seizure was unconstitutional because there was no probable cause to arrest Plaintiff for any of the three ordinance violations.  Concerning the charge of

15

disorderly conduct while under the influence, Plaintiff argues that he had not been drinking alcohol and Payne could not have observed any disorderly conduct while 30 yards away from Plaintiff.  [*Id.* at 9-10].  Concerning the charge of disorderly conduct for acting in a violent and tumultuous way, Plaintiff argues that his conduct was not combative.  Concerning the charge of disorderly conduct for blocking the vehicle and pedestrian traffic, Plaintiff argues that the sidewalk was not crowded and Payne believed that Plaintiff did not understand his command to stop leaning on the barriers.  [Doc. 40 at 10-11].

> i.    *Section 1983 False Arrest Claim against Officer Payne*

The Fourth Amendment gives an individual the right to be free from "unreasonable searches and seizures."  U.S. Const. Amend. IV.  An arrest is a seizure. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137 (11th Cir. 2007).  To determine whether an arrest is reasonable, courts examine if there is probable cause for the arrest. *Id.*  Probable cause exists "when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime."  *Id.* (quoting *United States v. Floyd*, 281 F.3d 1346, 1348 (11th Cir. 2002)).  If an officer makes a mistake of fact,

16

probable cause may still exist if the mistake is objectively reasonable and if it was objectively reasonable to rely on the mistake in calculating probable cause. *See United States v. Gonzalez*, 969 F.2d 999, 1005 (11th Cir. 1992); *see also United States v. Chanthasouxat*, 342 F.3d 1271, 1276 (11th Cir. 2003) ("An officer's mistake of fact may provide the objective basis for . . . probable cause under the Fourth Amendment because of the intensely fact-sensitive nature of . . . probable cause determinations."). An officer who arrests an individual without probable cause violates the Fourth Amendment. *Skop*, 485 F.3d at 1137. "The existence of probable cause at the time of arrest, however, constitutes an absolute bar to a section 1983 action for false arrest." *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004).

Officer Payne arrested Plaintiff for violating the following three city ordinances: (1) disorderly conduct while under the influence, Atlanta, Ga., Ord. § 10-9; (2) disorderly conduct in congregating to impede pedestrian traffic, Atlanta, Ga., Ord. § 106-81(9); and (3) disorderly conduct by being violent toward a person, Atlanta, Ga., Ord. § 106-81(1). (*See* Incident Rep. in Doc. 29 at Exh. 4; Payne Dep. at 140-43). The disorderly conduct ordinances involving pedestrian traffic and violence toward another specifically state:

17

It shall be unlawful for any person within the corporate limits of the city to engage in any conduct described in the following subsections; provided, however, that no person shall be convicted of any of the following sections upon a showing that the predominant intent of such conduct was to exercise a constitutional right to:

> (1)  Act in a violent or tumultuous manner toward another whereby any person is placed in fear of the safety of such person's life, limb or health;
>
> . . .
>
> (9)   Stand or remain in or about any street, sidewalk, overpass or public way so as to impede the flow of vehicular or pedestrian traffic, and to fail to clear such street, sidewalk, overpass or public way after being ordered to do so by a police officer or other lawful authority;
>
> . . .

Atlanta, Ga., Ord. § 106-81(1), (9).  The disorderly conduct while under the influence ordinance provides:

> (a)  *Acts constituting violation*.  It shall be unlawful for any person within the corporate limits of the city to be disorderly while under the influence on the streets, sidewalks or other public places.  The following acts are declared to be in violation of this section:
>
> . . .
>
> (5)  Any person who shall lie down or otherwise obstruct, block or impede pedestrian or vehicular traffic on any sidewalk, street, or entrance or exit to any other public way, house of worship, business, public hall, theater, public conveyance or other public

18

place and who shall refuse to remove themselves when ordered to do so by a city police officer or other lawful authority while under influence of alcohol or drugs.

. . .

Atlanta, Ga., Ord. § 10-9(a)(5).[15]

The Court concludes that Plaintiff has created issues of material fact as to whether Officer Payne had probable cause to arrest him. As for the charge of disorderly conduct while acting in a violent or tumultuous manner, the evidence when viewed favorably to Plaintiff fails to show that Plaintiff was acting in a violent or tumultuous manner or that it was reasonable for Payne to believe that he was. Payne testified that Plaintiff clenched his fists and raised his upper lip in an aggressive manner. (Payne Dep. at 87, 91-92), but Plaintiff's version of events indicates that Plaintiff did not know Payne was approaching. (Johnson Dep. at 38-39). Instead, Plaintiff indicated that he obeyed Payne's order by stepping away from the barrier. (Johnson Dep. at 36). Plaintiff then was taken by surprise when Payne first made

---

[15]     Plaintiff claims that Payne charged him under § 10-9(a)(1) of the disorderly conduct while under the influence ordinance. [*See* Doc. 40 at 8]. Payne's incident report is unclear as to what section he charged Plaintiff with violating, (Incident Rep. in Doc. 29 at Exh. 4), but Payne's testimony reveals that Plaintiff was charged with disorderly conduct while under the influence for impeding pedestrian traffic, Atlanta, Ga., Ord. § 10-9(a)(5). (*See* Payne Dep. at 142).

19

contact with him.  Plaintiff was thrown over the barrier and then punched and pushed into the ground without offering any resistance.  (*See* Johnson Dep. at 38-41; Washington Dep. at 38).  This evidence when viewed in a light most favorable to Plaintiff indicates that he did not act in a violent or tumultuous manner as required by Atlanta Ordinance § 106-81(1).  Further, this evidence does not show that it was reasonable for Payne to believe that Plaintiff was acting in a violent or tumultuous manner given his surprise at by Payne's physical contact and his failure to fight back.  Thus, there is a material fact question as to whether Officer Payne had probable cause to arrest Plaintiff under Atlanta ordinance § 106-81(1).

Concerning the charges for disorderly conduct for impeding traffic, the Court also finds that issues of material fact exist as to whether Officer Payne had probable cause to arrest Plaintiff.  The parties both agree that Plaintiff was leaning on the barriers when Payne told Plaintiff and his friends to move.  (P ¶¶ 15, 17; Johnson Dep. at 24-25).  By standing by the barrier, Plaintiff could have impeded the flow of pedestrian traffic given Plaintiff's testimony that it was crowded near the Club Uranus entrance. (Johnson Dep. at 38).  The parties provide contrasting evidence as to whether Plaintiff failed to clear the way after Payne ordered him to do so.  Although Payne believed that Plaintiff did not obey his order, (Payne Dep. at 85-86), evidence indicates that once

20

Plaintiff was notified that he needed to move along, he and his friends moved, (Johnson Dep. at 36; P ¶ 29).[16]   The Court cannot resolve this factual dispute, and without resolution of this dispute, the Court cannot determine whether Officer Payne had probable cause to arrest Plaintiff under Atlanta ordinances § 106-81(9) or § 10-9(a)(5) for not obeying Payne's order to move away from the barrier.

---

[16]   Defendants cite to Washington's deposition as evidence that Plaintiff did not immediately move when Payne told him to move.  [Doc. 29 at 19 n.72].  The Court does not read Washington's testimony as indicating that Plaintiff failed to move after Payne instructed him.  Washington's testimony is as follows:

> I remember just sitting there talking.  We was [sic] actually talking about leaving.  And I heard somebody say, "Get off the fence."  I'm talking about loud, you know what I mean?

> And I turned to my left, and I knew he had to be screaming loud because he was, like, on down toward like the end of the rail.

> And then I turned around and told [Plaintiff and Benson], "This police officer over here wants us to get off the fence."

> Okay, we proceeded to get off the fence.  I remember taking, like - - when I first got off the fence, I was kind of, like, looking down.  I was like, "Oh, we gotta go."  I didn't really want to be there.

> And I remember taking like one, two steps and looking up, and [Payne], he was already, like, taking off running. . . .

(Washington Dep. at 32-33).  This testimony does not necessarily show that Plaintiff continued leaning on the barricades, but instead it shows, when viewed most favorably to Plaintiff, that Plaintiff and his friends walked away when instructed.

21

Accordingly, the Court **DENIES** Defendants' motion for summary judgment on Plaintiff's § 1983 false arrest claims against Officer Payne.

> ii.   *Section 1983 False Imprisonment Claim against Officer Payne*[17]

Defendants base their summary judgment motion concerning Plaintiff's false imprisonment claims on the fact that Payne had probable cause to arrest Plaintiff. [Doc. 29 at 19].  As explained above, Plaintiff has created issues of material fact as to whether Officer Payne had probable cause to arrest him.  Defendants' arguments based on lack of probable cause concerning false imprisonment are therefore equally unavailing.  *See Groman v. Township of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) (finding if jury found in favor of plaintiff's false arrest claim, it could also find an unconstitutional detention occurred because of the arrest).

---

[17]    A false imprisonment claim under § 1983 is based on the Fourteenth Amendment's protection against deprivations of liberty without due process of law. *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996).  When a police officer lacks probable cause to make an arrest, a plaintiff can make a false imprisonment claim based on the detention pursuant to the arrest.  Such a claim is grounded in the Fourth Amendment's guarantee against unreasonable seizures.  *Id.*  To state a false imprisonment claim, a plaintiff must establish: (1) the common law elements for false imprisonment - - (a) intent to confine; (b) acts resulting in confinement; and (c) consciousness of the plaintiff of confinement or resulting harm; and (2) the imprisonment resulted in a violation of a plaintiff's Fourth Amendment rights.  *See id.* (citing *Cannon v. Macon County*, 1 F.3d 1558, 1562-63 (11th Cir. 1993)).

22

Accordingly, the Court **DENIES** Defendants' motion for summary judgment concerning Plaintiff's § 1983 false imprisonment claims against Officer Payne.

>   iii.   *Section 1983 False Arrest and False Imprisonment Claims against the City of Atlanta*

Defendants argue that Atlanta is not liable for Plaintiff's § 1983 false arrest and false imprisonment claims, which Defendants refer to as the unreasonable seizure claims in their summary judgment brief.  Defendants assert that Atlanta provides training concerning probable cause and the circumstances under which officers can make an arrest without a warrant.  [*See* Doc. 29 at 16-17].  Plaintiff does not respond to this argument, but instead focuses on Atlanta's policy concerning use of force.  [*See* Doc. 40 at 13-16].  As a result, the Court concludes that Plaintiff has abandoned his false arrest and false imprisonment claims against the City.  *See, e.g., White v. Ga. Dep't of Motor Vehicle Safety*, No. 1:06-CV-0124-TWT, 2006 WL 1466254, at * 1 (N.D. Ga. May 19, 2006) ("[I]t is well-accepted in this district that the failure to respond to arguments relating to a claim constitutes abandonment of the claim.") (citing *Bute v. Schuller Int'l, Inc.*, 998 F. Supp. 1473, 1477 (N.D. Ga.1998); *Welch v. Delta Air Lines, Inc.*, 978 F. Supp. 1133, 1137 (N.D. Ga.1997)).

AO 72A
(Rev.8/82)

Even if Plaintiff had not abandoned these claims, the Court would conclude that Plaintiff has not identified any policy or custom of Atlanta's that permits false imprisonment or false arrest.  A municipality is liable under § 1983 when its official policy or custom causes a constitutional violation and causes injury to the plaintiff. *See Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (*en banc*). To establish a policy, a plaintiff may show either: "(1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Id.*  A single incident does not constitute a custom or practice. *Id.* at 1330 n.6.  The Court is unaware of any evidence demonstrating that Atlanta has a custom or policy permitting false arrest and false imprisonment.  Instead, the evidence of which the Court is aware indicates that recruits are trained regarding search and seizure, probable cause and the circumstances under which an arrest can be made without a warrant.  (McGirt Decl. ¶¶ 7-8).  This evidence indicates that there is no policy or custom by the APD that permits false arrest or false imprisonment.

Accordingly, the Court **GRANTS** Defendants' motion for summary judgment concerning Plaintiff's § 1983 false arrest and false imprisonment claims against the City of Atlanta.

24

b.      *Excessive Force*

i.      *Eighth Amendment*

Defendants argue that Plaintiff cannot raise an Eighth Amendment claim against the City because the Eighth Amendment primarily applies to incarcerated individuals. [Doc. 29 at 11].  Plaintiff has not responded to this argument.  [*See generally* Doc. 40]. As a result, the Court considers Plaintiff's § 1983 claims based on the Eighth Amendment to be abandoned.  *See, e.g., White*, 2006 WL 1466254, at * 1.

Even if Plaintiff had not abandoned his § 1983 claims based on the Eighth Amendment, the Court would still conclude that summary judgment is appropriate. The Supreme Court has stated that "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977).  The situation in the instant case concerned the arrest of Plaintiff, a free citizen.  There has not been any criminal prosecution.   As a result, the Court finds that the Eighth Amendment is inapplicable to Plaintiff's § 1983 claims based on excessive force. *See also Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that "*all* claims that law enforcement officers have used excessive force-deadly or not-in the course of an

25

arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard") (emphasis in original).

Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on Plaintiff's § 1983 claims stemming from the Eighth Amendment.

### ii. *Fourteenth Amendment*

Defendants argue that the Supreme Court's decision in *Graham*, 490 U.S. at 395, precludes Plaintiff from bringing an excessive force claim under the Fourteenth Amendment. [Doc. 29 at 11]. Plaintiff concedes that *Graham* precludes his claim under the Fourteenth Amendment for use of force. [Doc. 40 at 4]. Based on this concession, the Court concludes that Plaintiff has abandoned his § 1983 claim based on Fourteenth Amendment violations. Also, the Court agrees that *Graham* precludes any excessive force claims based on the Fourteenth Amendment given its holding that "*all* claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham*, 490 U.S. at 395.[18, 19]

_____

[18]    The Court notes, however, that a pretrial detainee may bring a Fourteenth Amendment excessive force claim. *See Bozeman v. Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005) (noting that claims of mistreatment by detainees are governed by the

26

Accordingly, the Court **GRANTS** Defendant's motion for summary judgment concerning Plaintiff's § 1983 claims of excessive force under the Fourteenth Amendment.

### iii.    *Fourth Amendment*

**Officer Payne**

Defendants argue that Payne had probable cause to arrest Plaintiff. [Doc. 29 at 18-19]. Specifically, Defendants assert that probable cause existed when Payne told Plaintiff to move along, but Plaintiff persisted in leaning on the barricade. [*Id.* at 19]. Plaintiff responds that Payne violated his constitutional rights by engaging in excessive force. [*See* Doc. 40 at 5-13]. Plaintiff identifies the following actions by Payne as constituting excessive force: (1) there was a size disparity between the two; (2) Plaintiff

---

Fourteenth Amendment's due process clause). Plaintiff is not a pretrial detainee, so the Fourteenth Amendment still does not apply to him.

[19]    The Court further notes that Plaintiff is able to bring the Fourth Amendment claim against state actors because "the Fourth Amendment was incorporated against the states by the Fourteenth Amendment." *Garrett v. Athens-Clarke County, Ga.*, 378 F.3d 1274, 1279 n.9 (11th Cir. 2004) (citing *Ingraham*, 430 U.S. at 673 n.42). "As such, his claim does implicate the Fourteenth Amendment's enabling aspect that permits a plaintiff to assert a violation of the Bill of Rights against a state actor, but does not implicate the Fourteenth Amendment as a source of substantive protections against unreasonable search and seizures . . . ." *Moreland v. Dorsey*, 230 F. Supp. 2d 1338, 1343 n.3 (N.D. Ga. 2002).

27

never posed a threat to Payne or fought back foreclosing the need for the body check; (3) Payne's body check caused the barricade and Plaintiff to fall and led Plaintiff to urinate on himself; (4) Payne continued to punch and shake Plaintiff while he was on the ground; and (5) Payne refused to allow a paramedic to provide medical care. [*Id.* at 6-7].

"The Fourth Amendment encompasses the right to be free from the use of excessive force during an arrest." *Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir. 2004). To evaluate an excessive force claim, courts use an objective reasonableness standard by examining "whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." *Id.* (quoting *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1248 (11th Cir. 2004)). Courts must examine "the situation through the eyes of the officer on the scene who is hampered by incomplete information and forced to make a split-second decision between action and inaction in circumstances where inaction could prove fatal." *Id.* This means that courts must determine whether a reasonable officer would believe that the level of force was necessary in light of the situation. *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002). Courts recognize that the right to make an arrest involves the right to use some

AO 72A
(Rev.8/82)

degree of physical coercion or threat of physical coercion.  *Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1332 (11th Cir. 2006) (citing *Graham*, 490 U.S. at 397).

A determination of whether the use of force was reasonable involves "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Lee*, 284 F.3d at 1197 (quoting *Graham*, 490 U.S. at 396).  To perform this balancing, courts evaluate a number of factors including: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; (3) whether the suspect is actively resisting; and (4) the extent of the injury inflicted. *Id.* (citing *Graham*, 490 U.S. at 396); *Leslie v. Ingram*, 786 F.2d 1533, 1536 (11th Cir. 1986).

The Court concludes that the evidence, when viewed in a light most favorable to Plaintiff, indicates that Officer Payne used unlawful force in effectuating the arrest of Plaintiff.  First, the crimes for which Plaintiff was eventually charged were misdemeanors.  *See* Atlanta, Ga.,Ord. §§ 106-81 (citing O.C.G.A. §§ 16-11-32, 16-11-43 as authority for the ordinance violations); Atlanta, Ga., Ord. § 10-9(c) (limiting punishment under the ordinance to no more than 180 days in prison or a fine

AO 72A
(Rev.8/82)

of no more than $1,000).[20]   Thus, the crimes for which Payne used force against Plaintiff were not serious in nature given their misdemeanor status.

Second, there is no evidence that Plaintiff posed any threat to Officer Payne or others in the crowd.  Payne testified that Plaintiff made a fist and curled his upper lip, (Payne Dep. at 87, 91), but Plaintiff's version of events does not indicate that he engaged in either of these actions.  Instead, Plaintiff was looking in the other direction when Plaintiff approached, (*id.* at 37-38), he was moving away from the barrier as Payne ordered, (P ¶ 29; Washington Dep. at 36), and he was taken by surprise by Payne's initial physical contact, (Johnson Dep. at 27-28).  Also, there is no evidence that Plaintiff had or was brandishing a weapon.  Further, Plaintiff stood 5 feet, 8 inches tall and weighed 148 pounds at the time of the incident, (Payne Dep. at 51), while Payne was 6 feet, 4 inches tall and weighed between 225 and 250 pounds at the time of the incident, (*id.* at 21-23).  This size disparity and Plaintiff's failure to engage in any threatening behavior indicate that Plaintiff posed no threat to Payne or anyone in the crowd.  Despite this seemingly compliant behavior, Officer Payne: (1) hit Plaintiff like someone rushing in football, (Johnson Dep. at 39); (2) grabbed Plaintiff by the collar

---

[20]     A misdemeanor under Georgia law is "any crime other than a felony," which is defined as a crime punishable by, *inter alia*, "imprisonment for more than 12 months."  O.C.G.A. § 16-1-3(5), (9).

30

and shook Plaintiff, (*id.* at 28); and (3) lifted Plaintiff off the ground and threw him across the barricade, (*id.* at 28-29).

Third, there is no evidence that Plaintiff attempted to resist arrest. (*See* Washington Dep. at 38).  Despite Plaintiff's submissive posture (prone and passive) once tossed over the barrier, (*see* Washington Dep. at 38), Officer Payne: (1) repeatedly picked Plaintiff up and pounded him into the street, (Johnson Dep. at 40-41); (2) hit and punched Plaintiff in the chest, (*id.* at 41); and (3) forced Plaintiff back on the ground after Plaintiff fell to the ground, (*id.*).  This evidence when viewed in Plaintiff's favor indicates that although Plaintiff made no attempt to resist, Officer Payne continued to use force.

Finally, the evidence indicates that Plaintiff sustained some injury from his encounter with Payne.  Although neither party has presented admissible evidence from a medical professional concerning the extent or seriousness of Plaintiff's injuries,[21] there is evidence that the injuries were of sufficient severity for the police to take

---

[21]     Both parties have attached documents from doctors or medical providers concerning Plaintiff's injuries.  These documents are not accompanied by sworn statements attesting to the truth of the statements in the documents.  Likewise, the documents have not been authenticated in any way.  As such, the Court cannot consider the diagnoses on summary judgment.  *See APA Excelsior III, L.P. v. Windley*, 329 F. Supp. 2d 1328, 1335 (N.D. Ga. 2004) ("Generally, documents must be properly authenticated in order for them to be considered on summary judgment.").

Plaintiff to Grady hospital where Plaintiff received some pain pills, (Johnson Dep. at 44-45), and for Plaintiff to lose his job because he was placed on light duty work stemming from the injuries, (*id.* at 47).   Thus, Officer Payne's use of force was sufficient to cause some type of physical injury to Plaintiff.

Based on these factors, the Court finds that there exists material fact questions as to whether Officer Payne's force was excessive in violation of the Fourth Amendment because no reasonable officer would believe that the level of Officer Payne's force was necessary given Plaintiff's actions.   Essentially, Officer Payne performed a football-like hit, tossed Plaintiff over a barricade, punched Plaintiff in the chest while he was lying on the ground, and repeatedly raised and slammed Plaintiff into the pavement for allegedly misdemeanor crimes while Plaintiff posed no opposition or threat.   Courts have determined that officers committing similar actions have engaged in excessive force. *See Jimenez v. City of Costa Mesa*, 174 Fed. Appx. 399, 403 (9th Cir. Apr. 5, 2006) (concluding that sufficient evidence was adduced for an excessive force claim where arrest was for a minor offense, punching continued to occur after plaintiff stopped resisting arrest while being held face down on the ground); *Ostroski v. Town of Southold*, 443 F. Supp. 2d 325, 342 (E.D.N.Y. 2006) (finding evidence of excessive force where officers initiated use of force before plaintiff started

32

to resist arrest, and officers continued to use force after plaintiff was subdued); *Pierre-Antoine v. City of New York*, No. 04-cv-6987, 2006 WL 1292076 at *4 (S.D.N.Y. May 9, 2006) (finding excessive force where officers repeatedly punched, kicked and stomped on plaintiff who had wielded a weapon despite his failure to resist and his attempts to explain his disability); *Wilson v. Lyons*, 270 F. Supp. 2d 73, 81-82 (D. Me. 2003) (finding sufficient evidence for excessive force claim where plaintiff did not resist arrest and officers charged plaintiff, threw him on the ground, punched him several times in the back, head and side, repeatedly kicked plaintiff while he was on the ground, and brutally made plaintiff stand up); *Nogue v. City of New York*, No. 98 Civ. 3058, 1999 WL 669231, at * 9 (E.D.N.Y. Aug. 27, 1999) (finding that jury could conclude use of force was unreasonable where plaintiff had stopped fleeing from police but was knocked to the ground and punched and kicked in the head and body while on the ground).  As a result, the Court concludes that Officer Payne is not entitled to summary judgment on Plaintiff's excessive force claim.

Accordingly, the Court **DENIES** Defendants' motion for summary judgment concerning Plaintiff's excessive force claim against Officer Payne.

***The City of Atlanta***

Defendants argue that the city cannot be held liable for excessive force because there is no policy or custom that caused Plaintiff's injuries. [Doc. 29 at 12-18]. Defendants argue that Payne was well trained and well qualified. [*Id.* at 14-15]. They argue that the other complaints of excessive force against Payne are not evidence of a policy permitting excessive force because the complaints were never substantiated after investigations. [*Id.* at 15-16]. Defendants further argue that the City had a policy against the use of excessive force because: (1) the APD requires that the force used be reasonable and necessary; (2) the City provides academy and field training on defensive tactics, appropriate use of force, and mechanics of arrest; and (3) APD officers receive yearly training that re-emphasizes criteria needed for use of force. [*Id.* at 16-17].

Plaintiff argues that he can establish liability against the City because the City's policy concerning the use of force created a climate that allowed APD officers to operate with deliberate indifference to the rights of citizens, which caused the violation of Plaintiff's Fourth Amendment rights. [Doc. 40 at 13]. Plaintiff argues that the APD failed to re-train Payne despite knowing that Payne had seven complaints for excessive force. [*Id.* at 15]. Plaintiff criticizes the investigation policy into use of force claims because there is no requirement of an independent investigator, there is no requirement

34

that the names of witnesses be obtained or that the witnesses be interviewed, and the supervisor of the officer can challenge the findings of internal affairs. [*Id.* at 15-16]. Plaintiff then argues that the City's failure to take corrective action or properly train Payne directly led to the excessive force and the injuries stemming from this force. [*Id.* at 16].

A municipality may be liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may be fairly said to represent official policy, inflicts the injury." *Mercado v. City of Orlando*, 407 F.3d 1152, 1161 (11th Cir. 2005) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). For a city to be liable for an excessive force claim, the plaintiff must: (1) provide evidence of a pattern of improper training; (2) show that the city was aware of the deficiencies in the training; and (3) demonstrate that the training or failure to train constituted deliberate indifference by the city. *Id.*

The Court concludes that Plaintiff has not provided sufficient evidence to demonstrate liability against the City. To prove custom or policy exists, Plaintiff relies on the following evidence: (1) the seven complaints of excessive force against Payne; (2) his criticism of the fact-finding process for investigating excessive force complaints; (3) his criticism of Payne's supervisor's intervention; and (4) the City's failure to

35

correct Payne's behavior.  [*See* Doc. 40 at 15-16].  This evidence is insufficient to establish a policy or custom of excessive force.

First, Plaintiff has not identified a pattern of improper training.  The evidence shows that officers undergo extensive training concerning the proper use of force including 50 hours at the academy and yearly in service training that involves use of force training.  (McGirt Decl. ¶¶ 5-6 in Doc. 29 at Exh. 7).  The Court is unaware of any evidence that this training has proven to be inadequate such as an epidemic of excessive force claims against Atlanta officers.

The Court is not convinced with Plaintiff's arguments concerning the deficiencies in the City's investigation of excessive force claims.  The City requires supervisors to record a citizen complaint and then route it to the most appropriate venue for investigation.  (Moss Dep. at 98).  The City uses internal affairs to investigate excessive force claims, (*see* Moss Dep. at 98; Payne Dep. at 122), and the City maintains records of claims against officers, (*see* Payne Dep. at 120).  After internal affairs completes its investigation, Moss reviews the file and the recommendation by internal affairs to determine whether to administer discipline.  (Moss Dep. at 99).  To determine the appropriate level of discipline, Moss considers the violation that was deemed to have occurred and the employee's previous disciplinary history.  (*Id.* at 112).

36

Plaintiff has not identified any case law indicating that similar fact-finding processes were inadequate, nor has he provided any testimony that such policies are generally considered inadequate. *See Brooks v. Scheib*, 813 F.2d 1191, 1195 (11th Cir. 1987) (holding municipality was not liable where plaintiff failed to provide evidence that different procedures for processing complaints would have prevented injuries). *Compare Vineyard v. County of Murray, Ga.*, 990 F.2d 1207, 1212-13 (11th Cir. 1993) (finding municipal policy led to plaintiff's injuries where evidence indicated it was not unusual to receive complaints about officers, the person answering the phone had discretion about how to deal with the complaint, the deputies accused of misconduct investigated the misconduct, the sheriff's department did not document citizen complaints or retain records of complaints, the officers did not complete an arrest report, and the department had no policies or procedures manual). As a result, there is no evidence for the Court to conclude that the deficiencies in excessive force investigations created a custom of excessive force by officers.

Second, even if Plaintiff's evidence concerning the inadequacies in the excessive force investigation was sufficient to identify a pattern of improper training or investigation, Plaintiff has not shown that the City was aware of these inadequacies in training. For instance, Plaintiff has not identified a history of widespread prior abuse

by APD officers to put the City on notice.  *See Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998).  Plaintiff identifies seven complaints against Payne, but none of these complaints were sustained against Plaintiff.  (*See* Payne Dep. at 121-22).  As the City notes, the mere accusation of misconduct is not necessarily relevant.[22] [*See* Doc. 29 at 15-16 (quoting *Brooks*, 813 F.2d at 1193].  Also, Plaintiff has not identified the specific factual allegations concerning these complaints, so he has not shown that these other incidents involved similar facts to place Atlanta on notice of deficiencies in its use of force training.  *See Mercado*, 497 F.3d at 1162.  As a result, the Court concludes that Plaintiff cannot hold the City liable for Payne's excessive force because there was no policy or custom that would have permitted Payne to engage in excessive force and caused Plaintiff's injury.[23]

--------

[22]     Moss testified that the APD would consider if Payne had 50 unsustained complaints against him and would place supervisory staff on notice because the APD would want to see if there was a pattern of conduct.  (Moss Dep. at 146-47).  Plaintiff has not provided any evidence that the APD should have been concerned by seven unsustained complaints.  Moss testified that the concern depends on context of the situations in which the officer is assigned.  (*Id.* at 150).

[23]     The Court notes that instead of having policies that facilitate use of force, the APD has a policy to prevent officers from engaging in unlawful use of force. Where the APD identifies a pattern of possible misconduct, it employs an early warning process to flag possible emerging trends by an officer.  (Moss Dep. at 148).

AO 72A
(Rev.8/82)

Accordingly, the Court **GRANTS** Defendants' motion for summary judgment concerning Plaintiff's § 1983 excessive force claim based on the Fourth Amendment against the City.

### c.    Malicious Prosecution[24]

Defendants fail to raise any arguments concerning Plaintiff's § 1983 malicious prosecution claim under § 1983.[25]  [*See* Doc. 29].  Defendants' only references to malicious prosecution about which the Court is aware relate to Plaintiff's state law malicious prosecution claim.  [*See id.* at 2, 20].  Defendants have not argued the merits of this state law claim, but instead contend that they have sovereign and official

---

[24]     "[T]he Eleventh Circuit 'has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983 .'" *Skop*, 485 F.3d at 1144 (quoting *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003)). To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove: (1) a violation of his Fourth Amendment right to be free from unreasonable seizures; (2) a criminal prosecution instituted or continued by the defendant; (3) a criminal prosecution instituted with malice and without probable cause; (4) a criminal prosecution that ended in the plaintiff's favor; and (5) a criminal prosecution that caused damage to the plaintiff.  *Wood*, 323 F.3d at 881.

[25]     Despite this failure, Plaintiff argues that Payne's actions led to malicious prosecution because: (1) Payne instigated the prosecution of Plaintiff; (2) Payne issued three citations summoning Plaintiff to court; (3) Plaintiff prevailed because the claims were dismissed for lack of prosecution; (4) Payne acted with malice as exhibited by his comments to Plaintiff immediately prior to the arrest; and (5) there was no probable cause to initially arrest Plaintiff.  [Doc. 40 at 12].

immunity under state law.  Thus, Defendants have failed to provide any arguments concerning why they are entitled to summary judgment on the merits of malicious prosecution claims.

To be entitled to summary judgment, the movant must demonstrate the following on issues where the non-movant has the burden at trial:

> the moving party is not required to support its motion with affidavits or other similar material negating the opponent's claim in order to discharge this initial responsibility.  Instead, the moving party simply may show [ ]-that is, point[ ] out to the district court-that there is an absence of evidence to support the non-moving party's case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial.

*See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-16 (11th Cir. 1993) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (*en banc*)).  Defendants have failed to advance any arguments concerning the merits of malicious prosecution claims whether they were raised under state law or § 1983. As a result, Defendants have not met their burden on summary judgment for challenging the § 1983 malicious prosecution claims, and they, therefore, are not entitled to summary judgment on these claims.  *See id.* at 1116 ("If the party moving for summary judgment fails to discharge the initial burden, then the motion must be

40

denied and the court need not consider what, if any, showing the non-movant has made.").

Accordingly, to the extent that Defendants intended to move for summary judgment on Plaintiff's § 1983 malicious prosecution claims, Defendants' motion for summary judgment is **DENIED** concerning the § 1983 malicious prosecution claims against both Defendants.

### 3.    State Law Claims

Plaintiff has brought the following state law claims against the Defendants: assault and battery; false arrest and false imprisonment; malicious prosecution; negligent hiring; negligent retention; negligent training and supervision; and intentional infliction of emotional distress.  Defendants base their summary judgment arguments solely on the grounds that they are immune under state law from these Georgia tort claims.  [Doc. 29 at 20-24].  The following discussion therefore only examines the immunity issue without considering the merits of each individual state law claim.

### a.    The City of Atlanta

Defendants argue that the City has governmental immunity under O.C.G.A. §§ 36-33-1, 36-33-3.  [Doc. 29 at 20-21].  Defendants argue that Atlanta has not waived its sovereign immunity by purchasing liability insurance to cover the acts

alleged by Plaintiff.  [*Id.* at 21].  Plaintiff concedes that if the City of Atlanta does not

maintain liability insurance, the City is entitled to governmental immunity.  [Doc. 40

at 17].  With this concession, the Court concludes that Plaintiff has not met his burden

of proving that the City waived its sovereign immunity, *see Steele v. Ga. Dep't of

Transp.*, 271 Ga. App. 374, 376, 609 S.E.2d 715, 718 (2005) (indicating that plaintiff

bears the burden of demonstrating entity waived sovereign immunity), and that Plaintiff

has abandoned his state law claims against the City.

Even if Plaintiff had not abandoned his state law tort claims against the City, the

Court would conclude that these claims were due to be dismissed.  Under O.C.G.A.

§ 36-33-1:

> [T]he General Assembly, except as provided in this Code section and in
> Chapter 92 of this title, declares it is the public policy of the State of
> Georgia that there is no waiver of the sovereign immunity of municipal
> corporations of the state and such municipal corporations shall be immune
> from liability for damages.  A municipal corporation shall not waive its
> immunity by the purchase of liability insurance, except as provided in
> Code Section 33-24-51 or 36-92-2, or unless the policy of insurance
> issued covers an occurrence for which the defense of sovereign immunity
> is available, and then only to the extent of the limits of such insurance
> policy. . . .

O.C.G.A. § 36-33-1(a).  Defendants have provided a sworn affidavit that Atlanta does

not maintain liability insurance for any of the circumstances outlined in Plaintiff's

42

complaint.   (Bezuneh Aff. ¶¶ 5-6).   As a result, the Court concludes that even if Plaintiff had not abandoned his state law claims against Atlanta, he could not raise them because Atlanta has sovereign immunity pursuant to O.C.G.A. § 36-33-1.  *See Reese v. City of Atlanta*, 261 Ga. App. 761, 761, 583 S.E.2d 584, 585 (2003) ("There being no evidence that the City waived its immunity by purchase of insurance, the City was entitled to summary judgment on all the claims" concerning a police officer's actions).

Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on Plaintiff's state law claims against the City of Atlanta.

### b.   Officer Payne

Defendants argue that assuming Payne is sued in his individual capacity, he is not liable under the doctrine official immunity because: (1) the circumstances surrounding Plaintiff's arrest involved Payne's discretionary functions, not his ministerial functions; and (2) the evidence does not demonstrate that he acted with actual malice or intent to cause injury while engaging in his discretionary duties. [Doc. 29 at 22-24].

Plaintiff responds that Payne is not entitled to official immunity because issues of material fact exist as to whether Plaintiff acted with actual malice.  Plaintiff identifies the following evidence as demonstrating that Payne intended to cause injury: (1) Payne

43

pushed with enough force to cause the barricade to fall down and to sling Plaintiff over the fence; (2) Plaintiff never made any movement toward Payne; (3) Payne began shouting at Plaintiff; and (4) Payne failed to show up for court.  [Doc. 40 at 17-19].

The doctrine of official immunity gives police officers protection from being sued in their personal capacity for negligent discretionary acts taken within the scope of their official authority as city police officers unless they act with malice or the intent to injure.  *Reese*, 261 Ga. App. at 761, 583 S.E.2d at 585.  Police officers do not have immunity for ministerial acts taken within the scope of their official authority.  *Id.*  This official immunity applies even if an arrest is based on a mistaken belief that the arrest is appropriate.  *See Touchton v. Bramble*, 284 Ga. App. 164, 167-68, 643 S.E.2d 541, 545 (2007) (quoting *Reed v. DeKalb County*, 264 Ga. App. 83, 86-87, 589 S.E.2d 584 (2003)).

The Court initially notes that Plaintiff has not brought the negligent hiring, negligent retention, and negligent training and supervision claims against Officer Payne.  Plaintiff's complaint clearly indicates that "the City of Atlanta" failed to exercise diligence in hiring Payne, continuing to employ Payne, and training and supervising Payne. (*See* Complaint ¶¶ 37, 39, 41 in Doc. 1).  As a result, the Court's immunity analysis only pertains to the state law claims of assault and battery,

44

malicious prosecution, false arrest, false imprisonment, and intentional infliction of emotional distress.

The Court concludes that Payne engaged in discretionary functions during the period immediately before and during his arrest of Plaintiff. *See Touchton*, 284 Ga. App. at 167, 643 S.E.2d at 545 (noting that an officer's decision to make a warrantless arrest is generally a discretionary act); *Adams v. Carlisle*, 278 Ga. App. 777, 804, 630 S.E.2d 529, 549 (2006) ("Deciding to arrest is a discretionary act."); *Delong v. Domenici*, 271 Ga. App. 757, 758, 610 S.E.2d 695, 698 (2005) (finding officer had official immunity from assault and battery claim stemming from arrest); *Reese*, 261 Ga. App. at 761, 583 S.E.2d at 585 (concluding investigation of a complaint and subsequent arrest of plaintiff fell within officer's discretionary duties). Since Payne was acting within his discretionary duties, the Court must determine whether Officer Payne's actions were a result of actual malice or intent to injure.

Actual malice "means a deliberate intent to do wrong." *Touchton*, 284 Ga. App. at 168, 643 S.E.2d at 545 (quoting *Reed*, 264 Ga. App. at 86-87, 589 S.E.2d 584). It requires "a deliberate intention to do wrong and denotes 'express malice or malice in fact." *Bashir*, 445 F.3d at 1333 (quoting *Adams v. Hazelwood*, 271 Ga. 414, 415,

520 S.E.2d 896, 898 (1999)).    Thus, reckless disregard does not constitute actual malice.  *Touchton*, 284 Ga. App. at 168, 643 S.E.2d at 545.

The Court concludes that Plaintiff has created an issue of material fact as to whether Payne acted with actual malice in arresting Plaintiff.  The evidence shows that the physically larger Payne threw an unsuspecting Plaintiff over a barrier and then proceeded to punch him and pound his body into the ground despite Plaintiff offering no resistance and instead asking the officer to stop because he believed he was injured. (*See* Johnson Dep. at 38-41; Washington Dep. at 38).  This evidence is sufficient for a jury to determine whether Payne acted with actual malice.  *See Tabb v. Veazey*, No. 1:05-cv-1642, 2007 WL 951763, at * 7-8 (N.D. Ga. Mar. 28, 2007) (finding evidence of actual malice where officer hit plaintiff on the face with butt of a handgun when plaintiff was no longer resisting); *Hill v. Mull*, No. 5:04-CV-329, 2006 WL 3022280, at *14 (M.D. Ga. Oct. 23, 2006) (finding issue of material fact existed as to actual malice where officer charged plaintiff like a football player, threw plaintiff to the ground while handcuffed, kneed plaintiff in the back, and watched as another officer stood on plaintiff's feet); *Reed v. City of Lavonia*, 390 F. Supp. 2d 1347, 1369-70 (M.D. Ga. 2005) (finding issue of fact as to actual malice where officer attacked plaintiff with a baton despite plaintiff's lack of resistance and continued to

46

beat plaintiff when he was on the ground); *Jackson v. City of Albany, Ga.*, 49 F. Supp. 2d 1374, 1381 (M.D. Ga. 1998) (finding issue of material fact existed where officer began hitting plaintiff with his nightstick after plaintiff was subdued); *see also Kidd v. Coates*, 271 Ga. 33, 34, 518 S.E.2d 124, 125 (1999) (noting that an officer's injurious work-related act committed without justification was an act with actual intent to cause injury).  Because an issue of material fact exists as to whether Officer Payne acted with actual malice, the Court concludes that Payne is not entitled to official immunity from Plaintiff's tort claims.

Without official immunity, Payne will only be entitled to summary judgment on Plaintiff's state law claims if he demonstrates that no issues of material fact exist concerning the merits of the individual tort claims.  To make this showing, Payne must identify the absence of evidence to support these tort claims or provide affirmative evidence that plaintiff cannot prove these tort claims.  *See Fitzpatrick*, 2 F.3d at 1115-16.  Payne has done neither because his summary judgment brief focused exclusively on official immunity.  As a result, Plaintiff was under no burden to put forth any evidence in support of these tort claims against Payne.  The Court therefore concludes that Payne is not entitled to summary judgment on the assault and battery, malicious prosecution, false arrest, false imprisonment, and intentional infliction of emotional

47

distress claims.  *See id.* ("If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made."); *see also* FED. R. CIV. P. 56(e) (placing burden on non-moving party to respond when motion for summary judgment is supported).

Accordingly, the Court **DENIES** Defendants' motion for summary judgment on Plaintiff's claims against Officer Payne for assault and battery, malicious prosecution, false arrest, false imprisonment, and intentional infliction of emotional distress.

## V.     CONCLUSION

For the aforementioned reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment, [Doc. 29],[26] and **GRANTS** Plaintiff's Motion for Correction of Error, [Doc. 37].  Also, the Court **DIRECTS** Defendants to file the originals of the following documents within **fifteen (15)** days of

---

[26]     The Court **GRANTS** Defendants' motion for summary judgment on the following claims: (1) all state law claims against the City of Atlanta; (2) the § 1983 false arrest, false imprisonment, and excessive force claims against the City; and (3) the § 1983 excessive force claims against both Defendants based on the Eight and Fourteenth Amendments.  The Court **DENIES** Defendants' motion for summary judgment on the following claims: (1) the state law claims against Officer Payne; (2) the § 1983 malicious prosecution claims against both Defendants; and (3) the § 1983 false arrest, false imprisonment and excessive force claims based on the Fourth Amendment against Payne.

48

entry of this Order: (1) the declaration of Major Calvin Moss; (2) the declaration of Sergeant Jeffrey McGirt; and (3) the affidavit of Tariknesh Bezuneh.

The parties further are **DIRECTED** to file their joint proposed consolidated pretrial order within **thirty (30) days** of the date of this Order.

**IT IS SO ORDERED and DIRECTED**, this the 20th day of December, 2007.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

49